Gabrielli, J. (dissenting in part).
I respectfully dissent as to the grant of summary judgment in favor of the defendant Jack Newfield. As the majority quite properly observes, the charge that plaintiff is "probably corrupt” is a statement of fact and not an expression of opinion.[1] To utter a charge that someone is "corrupt” or "probably corrupt” is to assert that the individual is, as a matter of fact, guilty of a crime or an act of moral turpitude (compare Buckley v Littell, 539 F2d 882, 895; cert den 429 US 1062, where the court held that defendant’s charge that plaintiff was a "libeler” was a defamatory statement of fact; Edwards v National Audubon Soc., 556 F2d 113, in which the court held that defendant’s statement that plaintiffs were "paid liars” was defamtory because it implied corruption and and did not merely constitute a poor opinion of scientific integrity; cf. Rosenblatt v Baer, 383 US 75). There may be those who find difficulty in the precise delineation of the distinction between fact and opinion but I submit that defendant[1] Newfield’s statement of "probable corruption” in the context of this case must be categorized as factual in nature. The statement is not one of opinion or comment as to plaintiff’s judicial ability or fitness for office, or a characterization of his attitude toward the various categories of litigants appearing before him, but is *388 instead a specific and pointed assertion relating to his honesty and integrity which should be deemed libelous per se (cf. Berney, Libel and the First Amendment—A New Constitutional Privilege, 51 Va L Rev 1, 10-13). Thus, I agree that the charge of corruption stands on a different footing from some of the other comments with respect to plaintiffs competence and fitness for judicial office. I reject however the majority’s conclusion that plaintiff has not met his burden of proving that he is not "probably corrupt”. There is no burden upon him to do so at this stage of the lawsuit. On a motion for summary judgment to dismiss the complaint it is necessary only that a genuine issue of fact be shown to exist and, of course, it is manifestly significant and important to recognize as we must, that all factual inferences must be drawn in favor of the party opposing the motion (6 Carmody-Wait 2d, NY Prac, § 39.29, p 476). Plaintiff has advanced a sufficient showing of the falsity of the charge of corruption to survive the present motion. The report of the Association of the Bar for the City of New York concluded that "Newfield failed to substantiate his charges against Justice Rinaldi”. Several counts of the indictment against plaintiff were dismissed and he was acquitted following a jury trial of the remaining counts. Other sources including the Brooklyn Bar Association and attorneys familiar with the cases reported by Newfield, indicated the inaccuracy and incompleteness of his version of Judge Rinaldi’s sentencing and bail decisions in those cases. In his moving papers, defendant does not assert the truth of the statement that plaintiff is "probably corrupt”, nor does he attempt to advance any support for that statement. Contrary to the majority’s belief, Newfield’s assertion that the "allegedly defamatory material originally published in the Voice * * * was true” does not relate to the charge that plaintiff is "probably corrupt” which did not appear in the original articles. Newfield himself, in fact, stated that "in none of these [Voice] articles do I allege corruption or venality”.
It must be concluded that Newfield’s additional characterization of the plaintiff as "suspiciously lenient” is libelous per se for, even as states the majority, "we have no doubt that the complaint states a good cause of action for libel per se” since it is the law that: " '[a]ny written or printed article is libelous * * * if it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace’ ” (p 379). Indeed, the majority concedes that the characterization of plaintiff as "suspiciously *389 lenient” stands as an accusation of criminal behavior which is not constitutionally protected (p 382).
This brings me to the crucial issues in this case: whether plaintiffs cause of action against defendant Newfield may survive a motion for summary judgment on the issue of actual malice.[2] Notwithstanding the propriety of the vehicle of summary judgment in a libel case (see Trails West v Wolff, 32 NY2d 207, 221), to prevail on a motion for summary judgment the moving party must demonstrate that there are no triable issues of fact (see, generally, 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.05c). As indicated above, it is of utmost importance that, in determining such a motion, the court must draw all inferences of fact in favor of the party opposing the motion (6 Carmody-Wait 2d, NY Prac, p 476); and a motion for summary judgment should be granted only when it is absolutely clear that no triable issue of fact is presented (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3212.1, p 424). On the facts of this case as revealed in the pleadings and the motion papers, one is compelled to conclude that the question of defendant Newfield’s actual malice must be submitted to the jury. In this case, "[t]he finder of fact * * * [should] determine whether the publication was indeed made in good faith” (St. Amant v Thompson, 390 US 727, 732). Defendant Newfield has advanced no basis other than plaintiff’s dismissed indictment for his charge of corruption. The facts pertaining to the dispositions of various cases by plaintiff reported on by the defendant did not provide the factual basis for the charge. Newfield was aware that the articles were factually incomplete and presented a biased view of Judge Rinaldi’s decisions. While such a presentation could not, of course, itself be the basis of a libel action, the omission of glaring facts favorable to Judge Rinaldi bears significant relevance to the issue of actual malice. Attorneys having knowledge of the specific cases reported by Newfield had written letters to New York Magazine and the Village Voice, the publishers of the original articles, identifying specifically the misleading and incomplete portions of Newfield’s accounts. *390 Newfield was made aware of the content of these letters during his deposition in a prior, separate action for libel based on the publication of the original articles (Rinaldi v Village Voice, 47 AD2d 180, cert den 423 US 883). That deposition of course, preceded the publication of the book which generated the instant libel action. Also, prior to the publication of the book Newfield had received a copy of a report by the Brooklyn Bar Association which outlined the inaccuracies and omissions in Newfield’s accounts of certain cases presided over by plaintiff. Newfield also admitted reading the minutes in those four cases which themselves confirmed the unbiased report made by the bar association. In light of this undisputed knowledge, there is, at the very least, a triable issue of fact whether Newfield had "serious doubts” as to the truth of the charge of corruption. The defendant places great reliance on the fact that plaintiff had been indicted for perjury and obstruction of justice to negate the claim of actual malice. However, the indictments in those cases were in no way related to the cases which were the subject of Newfield’s book. Furthermore, the indictment provides no independent basis for the statement of probable corruption because an indictment has no probative value (People v Cook, 37 NY2d 591, 596). As defendant is undoubtedly aware, in our system of law, a person is presumed innocent until proven guilty. On the basis of the specific allegations of fact concerning defendant Newfield’s awareness of the lack of support for his charge of corruption, I do not believe that it would be proper to conclude at this stage that plaintiff could not, as the law requires, establish with clear and convincing evidence that defendant Newfield’s statement was made with knowledge of falsity or reckless disregard of truth or falsity (Kent v City of Buffalo, 29 NY2d 818, 819; New York Times Co. v Sullivan, 376 US 254, 279-280; Gertz v Robert Welch, Inc., 418 US 323, 342). These specific allegations of evidentiary fact compel a denial of defendant Newfield’s motion for summary judgment; if. proved at trial, they would provide ample support for a jury finding that Newfield certainly entertained "serious doubts” concerning the truth of the statement that plaintiff was "probably corrupt” (compare Indig v Finkelstein, 23 NY2d 728, 729; Still-man v Ford, 22 NY2d 48, 53; Shapiro v Health Ins. Plan of Greater N. Y, 7 NY2d 56, 63). On the record in this case the issue of clear and convincing evidence is, as indeed it should be, one for the jury to pass upon. To require any plaintiff to demonstrate by motion papers the existence of a triable issue *391 of fact with respect to "actual malice” more clearly and convincingly than plaintiff has done in this case is to summarily foreclose the possibility of ever bringing a libel action to the trial stage. Even the United States Supreme Court has not sought to erect so formidable and impenetrable a barrier for plaintiffs in libel actions. By its decision in this case, the majority today effectively outlaws the disposition of libel cases except by summary judgment in favor of defendants. Even more foreboding is the fact that today’s decision makes public officials fair game for those who are quick to fire off allegations of wrongdoing on the basis of knowingly or recklessly false and inaccurate reports. I cannot conclude that the New York Times Co. v Sullivan rule was intended to render public officials the helpless targets of reckless reporting and ill-founded allegations of corruption.
In conclusion, it should be emphasized that this case presents a delicate and difficult dilemma. We are profoundly committed to a strong and free press especially in the area of political debate and critique of government, even to the extent that a certain degree of harm to the reputation of public officials will be permitted in order to preserve the unimpeded flow of information to the public and to prevent the muffling of the critic’s voice (see Time, Inc. v Pape, 401 US 279, 290-292; New York Times Co. v Sullivan, supra, p 279). Indeed, our society is probably unique in its tolerance of sharp and robust criticism of public officials and government. On the other hand, however, we are equally committed to individual rights and in particular to the guarantee that one is presumed innocent until proven guilty in accord with the mandates of due process of law (US Const, 14th Arndt). Situations arise when these rights come into conflict. The task of balancing the competing interests may not be shirked by the ritualistic incantation of the rule of New York Times Co. v Sullivan (supra), as the majority concedes. Rather, the balancing must be achieved by a painstaking examination of the particular facts of each individual case in which the rights of the press and the rights of the individual are counterpoised. Newfield may entertain and express whatever opinion he may have concerning plaintiff’s judicial abilities and his performance of the duties of his office. His right to do so is the very essence of the First Amendment. However, to state that a public official is guilty of illegal conduct without any factual basis whatsoever or with a knowingly inadequate foundation to support *392 such a statement (as in this case where Newfield was made aware of the gross errors in factual statements he made before the book was published) should not fall within the sphere of expression protected by the First Amendment. The harsh and drastic remedy of summary judgment should not be granted where such baseless allegations of corruption and incompetence have been made and the plaintiff has set forth sufficient factual allegations to demonstrate that the maker of the statements in "reckless disregard” of his awareness. Thus, I vote to modify the order of the Appellate Division by granting the motion of defendant Holt, Rinehart & Winston for summary judgment and, would otherwise affirm, thus allowing the case against defendant Newfield to proceed to trial.
Chief Judge Breitel and Judges Jones, Wachtler and Cooke concur with Judge Jasen; Chief Judge Breitel concurs in a separate opinion in which Judge Wachtler also concurs; Judge Fuchsberg concurs in result only in another opinion; Judge Gabrielli dissents in part and votes to modify in another opinion.
Order reversed, with costs, and appellants’ motions for summary judgment granted. Question certified answered in the negative.

. A charge of corruption goes essentially to the motive behind an individual’s acts. As one court has noted, "[t]he state of a man’s mind is as much a fact as the state of his digestion” (Edgington v Fritzmaurice, 29 Ch D 459, 483 [CA]).

. I am required to concur in the majority’s disposition of the case with respect to defendant Holt, Rinehart & Winston. The record does not sustain a finding that the publisher possessed a high degree of awareness or serious doubts as to the falsity of the claim of corruption. Holt reasonably relied on defendant Newfield’s investigative reporting (cf. Edwards v National Audubon Soc., 556 F2d 113, supra), although it later developed to be without factual foundation or warrant.