OPINION OF THE COURT
Theodore A. Kelly, J.
In this action to recover damages for alleged malicious prosecution, false arrest, assault and violation of constitutional rights, defendant has moved for summary judgment.
In June, 1973 the office of the former Rockland County District Attorney, Robert R. Meehan (hereinafter the District Attorney) was conducting an investigation into alleged illegal and corrupt activities by certain agencies and public officials within the county. Plaintiff, who was the Director of Public Works for the Town of Orangetown, testified before a Special Grand Jury on June 5, 1973 and June 12, 1973. His testimony concerned his alleged interest in two firms which were doing business with the Town of Orangetown and whose work was subject to the inspection and approval of plaintiff in his official capacity.
In September, 1973 plaintiff was indicted by the Grand Jury for perjury, conflict of interest and official misconduct. A bench warrant for his arrest was issued. He was taken into custody on September 24, 1973, arraigned in the Rockland County Court and released on his own recognizance.
Plaintiff subsequently moved to dismiss the indictment. By decision and order dated December 9, 1974, Judge Fred Dickinson, then County Judge of Putnam County sitting by assignment of the Appellate Division, Second Department, dismissed the indictment. Judge Dickinson held that plaintiff, *835 as a target of the investigation or as a prospective defendant, could not be called and examined before the Grand Jury, even if he failed to assert his privilege against self incrimination, and that his constitutional rights had been violated.
On December 31, 1974 the District Attorney appealed to the Appellate Division, Second Department. On August 19, 1975 the present District Attorney of Rockland County withdrew the appeal.
Plaintiff served defendant with a notice of claim under section 50-e of the General Municipal Law on October 15, 1975. The instant action was commenced on August 5, 1976.
Defendant’s motion for summary judgment is predicated upon two grounds. Defendant first contends that plaintiffs notice of claim was untimely served and that the later action was untimely commenced in violation of section 50-e. Defendant further contends that the District Attorney is immune from liability for his official actions. Hence, defendant asserts, it is likewise insulated from any liability to plaintiff for the actions of the District Attorney. Defendant also alleges that it is not responsible for the actions of the Rockland County Sheriff whose representatives took plaintiff into custody at the Rockland County jail after he had been arrested.
Plaintiffs contention, in substance, is that the District Attorney, when he allegedly committed the acts which are the gravamen of the complaint, was acting in an administrative or investigatory capacity and, accordingly, was not immune from liability. He further contends that the Rockland County Legislature, through a local law adopted in 1973, has assumed liability for the actions of the Sheriff.
In the court’s opinion the motion for summary judgment should be granted and the complaint dismissed.
No public officer is responsible in a civil suit for a judicial determination, however erroneous or wrong it may be, or however malicious even the motive which produced it (Rottkamp v Young, 21 AD2d 373, affd 15 NY2d 831). A District Attorney is a quasi-judicial officer acting for the State in criminal matters, including criminal investigations and prosecutions within his county (Manceri v City of New York, 12 AD2d 895). As such quasi-judicial officer, a District Attorney is immune from civil suit for an official act performed in the investigation and prosecution of criminal charges, the interrogation of persons accused of crimes and in appearing in court in the course of various criminal proceedings (Zimmer-
*836 man v City of New York, 52 Misc 2d 797; Schanbarger v Kellogg, 35 AD2d 902; Carpenter v City of Rochester, 67 Misc 2d 832).
The issue of a State prosecutor’s immunity was considered by the United States Supreme Court in Imbler v Pachtman (424 US 409). Imbler involved an action under section 1983 of title 42 of the United States Code for alleged violation of plaintiffs constitutional rights. Plaintiff had been convicted in the State of California for felony murder. He ultimately obtained his release from State prison through Federal habeas corpus proceedings in which it was found that the State prosecuting attorney had knowingly used false testimony and had suppressed evidence favorable to the defense. Plaintiff instituted an action against the prosecutor and certain police officers, alleging that they had conspired to charge and convict him, and that the prosecuting attorney had knowingly used false evidence and suppressed material evidence. Plaintiffs complaint was dismissed in the District Court on the grounds that the State prosecutor was immune from civil liability for acts done as part of his official functions. The United States Court of Appeals for the Ninth Circuit affirmed. On certiorari the United States Supreme Court also affirmed.
The court held that a State prosecutor, who acted within the scope of his duties in initiating and pursuing a criminal prosecution and in presenting the State’s case, was absolutely immune from a civil suit for damages for alleged deprivations of the criminal defendant’s constitutional rights under section 1983 of title 42 of the United States Code. Such immunity from liability was held applicable even where the prosecutor knowingly used perjured testimony, deliberately withheld exculpatory information, or failed to make full disclosure of all facts casting doubt upon the State’s testimony.
After discussing the public policy considerations which underly such a rule, the court stated as follows (424 US 409, 427-428, supra):
"We conclude that the considerations outlined above dictate the same absolute immunity under § Í983 that the prosecutor enjoys at common law. To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor’s immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecu *837 tor’s duty that is essential to the proper functioning of the criminal justice system. “Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice. With the issue thus framed, we find ourselves in agreement with Judge Learned Hand, who wrote of the prosecutor’s immunity from actions for malicious prosecution:
'As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.’ ”
The court then defined the boundaries of their holding in the following manner (pp 430-431): "We agree with the Court of Appeals that respondent’s activities were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity would apply with full force. We have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor’s responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate.” (Emphasis supplied.)
Plaintiffs complaint has been framed to avoid a defense of immunity under the rule pronounced in the Imbler case. This is readily apparent through the use of the words "investigative,” "investigatory” and "administrative”. The gravamen of the complaint, however, is clearly the alleged impropriety of the District Attorney in the manner that he presented evidence to the Grand Jury. The complaint alleges, for example, that the District Attorney withheld evidence from the Grand Jury that would have vindicated plaintiff; that he failed to properly advise the Grand Jury; that he suppressed and concealed evidence and conspired with others to obtain an indictment; that he permitted false and misleading testimony to be presented to the Grand Jury, with knowledge that it was false, and that he took no action to correct the same. Substantially similar claims were made by the plaintiff in Imbler. These allegations all relate to the District Attorney’s performance of quasi-judicial functions to which the shield of immunity attaches. The defense of immunity cannot be avoided by conclusory allegations which attribute his actions to improper investigation or the failure to take correct administrative *838 steps. No evidentiary facts have been submitted to support this contention or to establish any basis for liability other than prosecutorial Grand Jury activity.
There is also no basis for imposing liability upon defendant by reason of alleged improprieties of the Sheriff. A county is not liable for the acts of the Sheriff (NY Const, art XIII, § 13, subd [a]; Snow v Harder; 43 AD2d 1003; Foyster v Tutuska, 25 AD2d 940). Since the immunity is of constitutional dimension it cannot be altered by local law (Perry v Custodi, 52 AD2d 1063).
In view of the court’s determination that defendant is entitled to summary judgment, it is unnecessary to consider its contention that plaintiffs notice of claim was untimely. The court notes, however, that the criminal prosecution against plaintiff did not terminate until August 19, 1975 when the present District Attorney withdrew the appeal taken from Judge Dickinson’s order. It was then that plaintiffs cause of action for malicious prosecution accrued, and service of a notice of claim on October 15, 1975 was timely (Broughton v State of New York, 37 NY2d 451). As to the second cause of action which alleges that plaintiff was assaulted, the acts complained of occurred at the time of defendant’s arrest on September 24, 1973. The notice of claim as to the assault, therefore, was clearly untimely.
As to the cause of action for false arrest, the 90-day period for serving a notice of claim under section 50-e of the General Municipal Law commences on the day that the claimant is released from actual custody (Molyneaux v County of Nassau, 16 NY2d 663; Allee v City of New York, 42 AD2d 899; Tucci v County of Nassau, 50 AD2d 945). Plaintiff was released in his own recognizance following his arraignment in County Court on September 24, 1973. The notice of claim for alleged false arrest, accordingly, was also untimely.
By reason of the foregoing, the court would dismiss plaintiffs second cause of action, and all parts of the first and third causes of action which seek damages for alleged false arrest, for failure to comply with section 50-e of the General Municipal Law.